IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNNARDIO DEAN, | |
| Plaintiff, | No. 18-cv-07240 |
| v. | Judge John F. Kness |
| METRO STAFFING, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lynnardio Dean, a Black man who identifies as gay, alleges that his former employer, Metro Staff, Inc. ("Metro Staff") (incorrectly named in the complaint as "Metro Staffing") discriminated against him on account of his race, sex, and sexual orientation. Metro Staff claims that it did not discriminate against Dean and instead fired him because he physically attacked another employee. Because Dean has failed to present any evidence from which a reasonable jury could find that Metro Staff terminated Dean for a discriminatory purpose, Metro Staff's motion for summary judgment is granted.

**I.  BACKGROUND**

  **A.  Compliance with Local Rules**

Before turning to the merits of the parties' arguments, the Court must first address the issue of Dean's apparent failure to comply with the applicable Local Rules concerning summary judgment. Metro Staff argues that Dean failed to comply with

Local Rule 56.1, which required him to submit a statement in response in Metro Staff's statement of undisputed facts, and that this should result in an admission of Metro Staff's facts. Dkt. 72 at 2-3.

Consistent with the Local Rules, Metro Staff filed a Local Rule 56.1(a)(2) statement of undisputed facts with its summary judgment motion. Dkt. 63. The relevant factual assertions in Metro Staff's Local Rule 56.1(a)(2) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(d)(1)-(2) (the statement "must consist of concise numbered paragraphs" and each paragraph "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it"). Also consistent with the Local Rules, Metro Staff served on Dean a Local Rule 56.2 Notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Dkt. 64.

Local Rule 56.1(b)(2) required Dean to file a response to Metro Staff's Local Rule 56.1(a)(2) statement. For each of Metro Staff's asserted facts, Dean's response was required to "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." N.D. Ill. L.R. 56.1(e)(2). For any disputed facts, Dean was required to "cite specific evidentiary material that controverts the fact" and "concisely explain how the cited material controverts the asserted fact." N.D. Ill. L.R. 56.1(e)(3). Although Dean filed a 68-page handwritten response to Metro Staff's motion for summary judgment (Dkt. 68), he did not, as the Local Rules required, file a response to Metro Staff's Local Rule 56.1(a)(2) statement.

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015). *See also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("We have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions").

Dean's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) (nonprecedential disposition) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules"); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) (nonprecedential disposition) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though [the plaintiff] is a *pro se* litigant") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven pro se litigants must follow rules of civil procedure"); *McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Accordingly, the Court deems the facts set forth in Metro Staff's Local Rule

56.1(a)(2) statement to be admitted. *See* N.D. Ill. L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material"); *see also Lipinski v. Castaneda*, 830 F. App'x 770, 771 (7th Cir. 2020) (nonprecedential disposition) ("Because district courts may reasonably require that even pro se litigants strictly comply with local rules, the district court did not abuse its discretion" in deeming the defendants' version of the facts admitted where *pro se* plaintiff failed to respond to the defendants' Local Rule 56.1 statement); *Self v. Bergh*, 835 F. App'x 873, 874 n. 1 (7th Cir. 2020) (nonprecedential disposition) ("we have frequently explained that district courts may strictly enforce their local rules against *pro se* litigants at summary judgment"); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) (nonprecedential disposition) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation"); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion") (internal quotation marks omitted).

That said, the Court is mindful that "a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 . . . does not . . . automatically result in judgment for the movant. [The movant] must still

4

demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations and internal quotation marks omitted). This Court will, therefore, recite the admitted facts in Metro Staff's Local Rule 56.1(a)(2) statement, viewing those facts and any inferences drawn therefrom as favorably to Dean as the record and Local Rule 56.1 allow. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (on summary judgment, the court must view the facts "in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor, without necessarily vouching for their accuracy").

### B. Undisputed Facts

Defendant Metro Staff is a staffing agency that employs temporary staff assigned to worksites operated by Metro Staff's clients. Defendant's Statement of Undisputed Material Facts ("SOF"), Dkt. 63 ¶ 3. Metro Staff assigned workers to its client Aryzta AG ("Aryzta"), which operates two bakeries in the greater Chicago area. *Id.* ¶ 4. In addition to the Metro Staff employees, both Aryzta's own employees and several employees from another staffing agency worked at Aryzta's bakeries. *Id.* ¶ 6.

In April 2016, Metro Staff hired Plaintiff Lynnardio Dean, a Black man who identifies as gay, and assigned him to work as a "general laborer" at Aryzta's bakery in Cicero, Illinois. *Id.* ¶¶ 7, 18. During Dean's employment, Metro Staff assigned 262 Black, 163 Hispanic, and 3 white employees to work at Aryzta's bakeries. *Id.* ¶ 5. On November 10, 2016, Dora Gonzalez, another worker at the bakery, reported that Dean became upset with her and shoved her while they were working together on the bakery's product line. *Id.* ¶ 12. Metro Staff assigned two managers to investigate the

5

incident, including review of a video recording that captured the altercation. *Id.* ¶ 13. The managers reported their findings to Virginia Fabela, Metro Staff's Human Resources Manager, and recommended to Fabela that Dean be terminated. *Id.* ¶ 14. Fabela then viewed the video recording, confirmed that Dean shoved Gonzalez, and formally terminated Dean's employment on November 14, 2016 for failure to conform with Metro Staff's performance expectations, which prohibit "violent behaviors." *Id.* ¶¶ 14-15.

On November 28, 2016, Dean filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights ("IDHR"), which was automatically cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 17. In his Charge, Dean alleged that Metro Staff discriminated against him by suspending him indefinitely because of his race, sex, and sexual orientation.[1] *Id.* ¶ 18. On January 31, 2018, the IDHR served Dean with a "Notice of Dismissal for Lack of Substantial Evidence." *Id.* ¶ 19. Although Dean does not remember the exact date that he received that notice, he testified at his deposition that it was before the end of March 2018. *Id.* ¶ 20.

Dean filed his original complaint against Metro Staff on October 30, 2018 and amended his complaint on November 11, 2018. Dkt. 1, 12. Dean's amended complaint, which he filed *pro se* using the template of the Northern District of Illinois, does not

---

[1] Dean's Charge lists the basis for his discrimination claim as an "indefinite suspension." Dkt. 63-2. Fabela states in a sworn declaration, however, that while Dean was suspended during Metro Staff's investigation of the altercation with Gonzalez, Fabela ultimately "made the decision to terminate Dean's employment[.]" Dkt. 63-6 ¶¶ 18, 22. Regardless of whether Dean was suspended or terminated, the parties do not dispute that Dean suffered an adverse employment action that forms the basis for this IHRA and Title VII claims.

6

include specific counts. *See generally*, Dkt. 12. But based on the allegations in the amended complaint and the parties' arguments, the Court assumes that Dean brings claims for unlawful workplace discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) ("Title VII"), and the Illinois Human Rights Act, 775 ILCS 5/1-101 ("IHRA"). Metro Staff has moved for summary judgment on both of Dean's claims. Dkt. 61. That motion is now fully briefed and ready for the Court's review.

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). At the summary-judgment stage, a district court must view the facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). But as "the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III.   DISCUSSION

### A.   Statute of Limitations

Metro Staff first argues that Dean's claim for violation of the IHRA should be dismissed as time-barred. Before a plaintiff may bring a claim for a violation of the IHRA, he must first file a charge with the IDHR and receive a final decision. 775 ILCS 5/7A-102(G)(2). Once the IDHR issues a final decision, the claimant has 90 days to sue. 775 ILCS 5/7A-102(D)(3) ("If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to . . . commence a civil action in the appropriate circuit court . . . If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice").

Metro Staff argues that Dean's IHRA claim is time-barred because he failed to file suit within the 90-day window after receiving his final decision from the IDHR. Dkt. 62 at 6-7. Dean testified at his deposition that although he does not recall the exact date that he received the receipt of dismissal from the IDHR, he knows received it sometime before the end of March 2018. SOF ¶ 20. Viewing the record in the light most favorable to Dean, the Court assumes that Dean received the receipt of dismissal on March 31, 2018 at the very latest. He would thus have had until June 29, 2018 (90 days from March 31, 2018) to file his complaint. Dean, however, did not file this lawsuit until October 30, 2018: 213 days after receipt of dismissal from the IDHR and 123 days past the deadline to file a civil action. Dkt. 1. Accordingly, the

8

Court dismisses Dean's claims under the IHRA with prejudice as time-barred.

### B. Violation of Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual . . . because of such individual's race [or] . . . sex. . . ." 42 U.S.C. § 2000e–2(a)(1). To survive a motion for summary judgment on a Title VII discrimination claim, a plaintiff must present "evidence [that] would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself. . . . Relevant evidence must be considered and irrelevant evidence disregarded." *Id.*

When considering a summary judgment motion on a Title VII claim, some district courts have used the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as "an efficient way to organize, present, and assess evidence." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018); *see also Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (noting that *Ortiz* "did not alter" the *McDonnell Douglas* burden-shifting framework). But whichever approach the Court uses to analyze the evidence, the ultimate question is whether Dean has presented enough evidence of discrimination to support a jury verdict in his favor. *See Marshall v. Ind. Dep't of Correction*, 973 F.3d 789, 791 (7th Cir. 2020) (in deciding a motion for summary judgment, a district

9

court must keep in mind "*Ortiz's* admonition to consider all evidence in one pile"); *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) ("In adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?"); *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013) ("The central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)").

Metro Staff invokes both the *Ortiz* "reasonable factfinder" framework and the *McDonnell Douglas* burden-shifting framework in making its arguments. The Court finds, however, that the *McDonnnell Douglas* framework is not a particularly helpful way of analyzing the particular facts of this case, considering the disjointed nature of Dean's response brief and his failure to submit a statement of undisputed material facts in accordance with the Local Rules. Accordingly, following the Seventh Circuit's admonition in *Ortiz*, the Court will consider all evidence "in a single pile" and evaluate it "as a whole" without distinguishing between the "direct" and "indirect" methods of proof. *Ortiz*, 834 F.3d at 766. To defeat summary judgment, Dean must thus present evidence that would permit a reasonable jury to find that Metro Staff took adverse action against him because of his (1) race, (2) sex, or (3) sexual orientation. *Id.* at 765. The Court will examine each of these bases of alleged discrimination in turn.

          1.     *Race-Based Discrimination*

Dean first alleges that Metro Staff discriminated against him because of his

race in violation of Title VII. To succeed on a claim under Title VII for race-based discrimination, a plaintiff must show that his employer took an adverse employment action against him because of his race. *Ortiz*, 834 F.3d at 765. Metro Staff does not dispute that it took an adverse employment action against Dean by terminating him, but argues Dean's claim fails because he has not offered any evidence that suggests an improper racial motive for that termination. Dkt. 62 at 9-10.

As the evidentiary record reflects, Dean has failed to put forth any evidence showing that Metro Staff terminated him on account of his race. As discussed above, Dean has failed to submit a statement of undisputed facts in accordance with the Local Rules, and the Court has deemed Metro Staff's version of the facts as admitted. Moreover, at his deposition, Dean was unable to point to any evidence establishing that Metro Staff discriminated against him because he is Black. SOF ¶ 33; Dkt. 63-4, Dean Dep. at 32:10-14 (Q: "Are you aware of any facts showing that [Fabela] has disciplined African-Americans differently than members of other races who are found to have committed the same policy violations?" A: "No.").

When asked to identify any non-Black Metro Staff employees who hit or shoved another worker but were not suspended or terminated, Dean recalled an incident between him and another Metro Staff employee, Teodora Mendoza, a Hispanic female, that had taken place several years previously. Dean reported that, on July 27, 2016, Mendoza was pushing a pallet that injured Dean's hand as the two passed by each other. SOF ¶ 29. Metro Staff conducted a worker's compensation investigation and concluded that there was no evidence Mendoza intentionally

11

touched Dean. *Id.* ¶ 28. At his deposition, Dean could not offer any evidence that the incident was anything but an accident. *Id.* ¶ 30. Because the incident with Mendoza was an accident and Dean's altercation with Gonzalez was not, Mendoza is not a comparable employee, and Metro Staff's decision not to discipline her is not evidence that Metro Staff treated Black and non-Black employees differently for the same conduct. *See Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 730 n.16 (7th Cir. 2004) (on summary judgment, the plaintiff has a burden to "put forth a similarly situated employee who is directly comparable in all respects and was treated more favorably").

Metro Staff has also put forth evidence showing that other employees who were not Black were also terminated for engaging in physical altercations at work. For example, Metro Staff points to the case of former employee George Rodriguez, a Hispanic male, was who terminated following a January 2016 incident in which Rodriguez "shoved" another bakery employee's hand. Dkt. 62 at 2. Metro Staff investigated the incident and Fabela made the decision to discharge Rodriguez, like Dean, for failure to "meet Metro Staff's performance expectation that employees not resort to violence at work." *Id.*; SOF ¶¶ 9-10. At his deposition, Dean was shown a video recording of the incident involving Rodriguez, and Dean acknowledged that Rodriguez had "touched" the other bakery worker. *Id.* ¶ 10; Dkt. 63-4, Dean Dep. 46:5-24. Dean's inability to show disparate treatment of a similarly situated employee is fatal to his claim for race-based discrimination.

In short, because he has put forth no evidence that would enable a reasonable jury to find that Metro Staff terminated him because of his race, Dean's race-based

12

discrimination claim under Title VII falls short. Metro Staff is thus entitled to summary judgment on the Title VII claim to the extent it is based on unlawful race-based discrimination.

### 2. Sex-Based Discrimination

On summary judgment, Dean bears the burden of showing that "the evidence would permit a reasonable factfinder to conclude that [his] sex caused" Metro Staff to terminate him. *Owens v. Old Wis. Sausage Co.*, 870 F.3d 662, 666 (7th Cir. 2017). Metro Staff argues that it is entitled to summary judgment because Dean has put forth no evidence demonstrating that Metro Staff fired men who struck fellow employees but allowed women who did the same thing to keep their jobs. Dkt. 62 at 10; SOF ¶ 33.

When asked at his deposition to identify the facts that established Metro Staff discriminated against him because he is a man, Dean could offer nothing but conjecture. SOF ¶ 23; Dean Dep., Dkt. 63-4 at 22:13-23 ("If it had been a lady . . . they probably would have just talked to her for a minute, put her over in the corner . . . But since I was male . . . they escorted me out immediately"). But this "guesswork and speculation [is] not enough to avoid summary judgment." *Good v. Univ. of Chicago Med. Center*, 673 F.3d 670, 675 (7th Cir. 2012), *overruled on other grounds by Ortiz*, 834 F.3d 760.

As discussed above, Dean identified Teodora Mendoza as someone whose sex was different from his own but who had not been subject to the same disciplinary action for similar conduct. But again, Metro Staff's investigation concluded that the

13

contact between Mendoza and Dean was an accident. Accepting this fact as admitted, Dean has not put forth a similarly situated employee of a different sex who was not terminated for engaging in the same conduct that led to Dean's dismissal. Because Dean has not presented the Court with evidence on which a reasonable jury could rely to find in his favor, Metro Staff is entitled to judgment as a matter of law on Dean's claim that Metro Staff discriminated against him on the basis of sex. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### 3. Sexual Orientation-Based Discrimination

Finally, Dean claims that he was terminated on account of his sexual orientation. As the Supreme Court recently instructed, Title VII's prohibition on employment discrimination based on sex also prohibits discrimination based on sexual orientation. *Bostock v. Clayton Cnty.*, — U.S. —, 140 S. Ct. 1731, 1754 (2020). At his deposition, however, Dean admitted that he could not identify any facts establishing that Metro Staff discriminated against him because he is gay. *See* SOF ¶ 22, Dkt. 63-4 at 21:23 – 22:4 (Q: "As far as your sexual orientation is concerned, can you tell me all of the facts that you believe show that your sexual orientation was a factor in your suspension and termination?" A: "My sexual—I can't—no, I can't prove that. I can't prove that").

In addition, Fabela testified she was not aware of Dean's sexual orientation at the time she terminated his employment. *Id.* ¶ 30. Dean has not provided any material facts that would refute this statement, and the Court cannot presume that Metro Staff unlawfully discriminated against Dean based on his sexual orientation

14

when Fabela, who made the ultimate decision to terminate Dean, was not even aware that Dean was gay. *See, e.g., Reed v. Great Lakes Cos.*, 330 F.3d 931, 934 (7th Cir. 2003) ("It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion"); *Williams v. Wis. Dep't of Workforce Dev.*, 731 F. App'x 537, 538 (7th Cir. 2018) (nonprecedential disposition) (affirming grant of summary judgment on employment-related discrimination claim where the plaintiff "submitted no evidence that those defendants in charge of hiring were aware . . . of her disability [or] sexual orientation"); *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 703 (8th Cir. 2012) ("In cases of discrimination based on a protected status that is not necessarily obvious . . . the employee must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it"); *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) ("We cannot presume that an employer most likely practiced unlawful discrimination when it does not know that the plaintiff even belongs to the protected class").

Dean has not introduced sufficient evidence showing that Metro Staff terminated him because of his sexual orientation. Accordingly, Metro Staff is entitled to summary judgment on Dean's Title VII claim based on sexual orientation discrimination. *Ortiz*, 834 F.3d at 765.

*   *   *

To summarize, Dean has presented no evidence to show that his race, sex, or sexual orientation played any role in his termination. Dean has put forward no

evidence suggesting that Fabela—or any other decisionmaker at Metro Staff—harbored any prejudice toward Black people, gay men, or men in general. By contrast, Metro Staff has submitted uncontroverted evidence showing that it had a legitimate, non-discriminatory reason for terminating Dean: namely, physically attacking another bakery employee in violation of Metro Staff's performance expectations. *Cf. Johnson v. West*, 218 F.3d 725, 733 (7th Cir. 2000) ("we have no quarrel with the idea that an employer need not tolerate employees who go around resolving their problems with physical assaults"). Because Dean falls short of presenting evidence that could lead a reasonable factfinder to find that Metro Staff made the decision to terminate him because of discrimination reasons, Metro Staff's motion for summary judgment on Dean's Title VII claims is granted.

### IV.    MOTION FOR ATTORNEY REPRESENTATION

Finally, the Court addresses Dean's pending renewed motion for attorney representation. There is no "right to court-appointed counsel in federal civil litigation," *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but the Court has discretion to request that an attorney represent an indigent litigant on a volunteer basis under 28 U.S.C. § 1915(e)(1). A district court must ask both whether a plaintiff who seeks appointed counsel has made a reasonable attempt to obtain counsel and, given the difficulty of the case, whether the plaintiff appears competent to litigate it himself. *Armstrong v. Krupiczowicz*, 874 F.3d 1004, 1008 (7th Cir. 2017) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)).

It bears noting that this is not Dean's first request for appointed counsel. Dean

filed his first motion for attorney representation on October 30, 2018 simultaneously with his first complaint. Dkt. 6. The previously-assigned judge denied that motion without prejudice because Dean "ha[d] not contacted any attorneys/organizations seeking representation." Dkt. 9. Nevertheless, Dean waited nearly two years to file a renewed motion for attorney representation. Dkt. 81. In the meantime, Dean represented himself throughout all stages of the litigation, including discovery, several status hearings, and briefing on Metro Staff's motion for summary judgment. It was not until August 7, 2020—more than four months after the motion for summary judgment was fully briefed—that Dean renewed his motion for attorney representation. Dkt. 81. At this extremely late stage of the litigation, and in view of the Court's decision to grant Metro Staff's motion for summary judgment, the Court finds that appointing for counsel for Dean would be futile. Accordingly, Dean's motion for attorney representation is denied.

### IV. CONCLUSION

Metro Staff's motion for summary judgment (Dkt. 61) is granted. Judgment is entered in favor of Metro Staff and against Dean. If Dean wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Dean's motion for attorney representation (Dkt. 81) is denied. SO ORDERED.

Date: March 29, 2021

JOHN F. KNESS
United States District Judge